UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 21-20005-CR-GAYLES

UNITED STATES OF AMERICA

vs.

JORGE DIAZ GUTIERREZ,

    Defendant.
_____/

## FACTUAL PROFFER

If this matter were to proceed to trial, the Government would prove the following facts beyond a reasonable doubt. The Parties agree that these facts, which do not include all facts known to the Government and the defendant, Jorge Diaz Gutierrez (hereinafter "the Defendant"), are sufficient to prove the guilt of the Defendant as to Counts 1 and 10 of the Indictment.

Beginning no later than November 2016, and continuing through on or about July 21, 2020, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the Defendant knowingly and willfully combined, conspired, confederated, and agreed with his charged co-defendants, Department Health and Human Services – Office of Inspector General (hereinafter "HHS-OIG") Special Agent Alberto Alberico Ahias Crespo (hereinafter "SA Crespo"), Yandre Trujillo Hernandez (hereinafter "Trujillo"), Anais Lorenzo (hereinafter "Lorenzo"), and others, to possess with the intent to distribute Oxycodone, a Schedule II controlled substance, all in violation of Title 21, United States Code, Sections 846, 841(a)(1), 841(b)(1)(C). During this time frame, the Defendant also knowingly and willfully combined, conspired, confederated, and agreed with SA Crespo and others to corruptly otherwise obstruct, influence, and impede an official proceeding, that is, ongoing and foreseeable grand jury proceedings in the Southern District of Florida investigating the Defendant's Oxycodone trafficking activities, all in violation of Title 18,

Page 1 of 7

United States Code, Sections 1512(c)(2) and (k).

During the charged Count 1 and Count 10 conspiracies, the Defendant operated as a patient recruiter, that is, the Defendant brough patients, often Medicare or Medicaid eligible, to health care clinics in order to unlawfully obtain Oxycodone and distribute it for street-level profits. As set forth in the Indictment, and confirmed by continuing federal grand jury investigations that resulted in Southern District of Florida criminal cases United States v. Bosch et al., 18-20352-CR-LENARD (hereinafter "Bosch case") and United States v. Gonzalez et al., 19-20055-CR-ALTMAN (hereinafter "Gonzalez case"), including court-authorized Title III intercepts over the Defendant's cellular telephone (xxx-xxx-3906), the Defendant operated out of West Medical Office, operated by Dr. Rudolph Gonzalez-Garcia Gonzalez ("hereinafter "Dr. Gonzalez"), and Pain Clinic #1. At these two (2) health care clinics, in exchange for unlawful kickback payments to the clinics and patients, the Defendant utilized patients M.P., A.A., P.R., B.R., M.C., and L.A., among others, to unlawfully obtain their Oxycodone prescriptions and subsequently distribute the pills. Pursuant to data from the Florida Prescription Drug Monitoring Program ("PDMP"), the amount of Oxycodone involved Defendant's charged drug trafficking activities was at least approximately 709 grams of Oxycodone, with a street value of approximately $500,000.

During this same time, and beginning no later than June 2019, the Defendant resided in an efficiency unit at the Hialeah, FL, residence of SA Crespo, a member of the Southern District of Florida Health Care Fraud Strike Force ("hereinafter "SDFL Strike Force").[1] The SDFL Strike Force, utilizing federal criminal grand jury proceedings in the Southern District of Florida, investigated the Bosch and Gonzalez cases listed above. Pursuant to these investigations, at least

---

[1] The SDFL Strike Force consists of interagency teams made up of law enforcement agents, investigators, and prosecutors and primarily focuses on health care fraud and health care-related narcotics trafficking in South Florida.

as early as May 2018, the SDFL Strike Force identified the Defendant as patient recruiter and pursuant to their ongoing investigation, planned to seek federal charges against him pursuant to grand jury proceedings. Thereafter, law enforcement uncovered that the Defendant's drug trafficking activities were being knowingly and willfully protected and aided and abetted by co-defendant SA Crespo. In and around this time, investigating agents also learned the following: 1) SA Crespo knew of the planned February 7, 2019, arrests of Dr. Gonzalez and four (4) other charged defendants in the Gonzalez case, and also volunteered to participate; 2) SA Crespo knew of the planned February 7, 2019, search warrant of Dr. Gonzalez's West Medical Office and also volunteered to participate; 3) SA Crespo shared cubicle space with the HHS-OIG case agent leading the investigation; 4) the status of the investigation and investigative targets and subjects, including Dr. Gonzalez, the Defendant, Lorenzo and others, were routinely and openly discussed in and around SA Crespo and his desk at the SDFL Strike Force; and 5) as an acting supervisor, during March 2019, SA Crespo approved various reports and documents in HHS-OIG's computer system regarding the Dr. Gonzalez investigation.

During September 2019, through December 2019, law enforcement utilized a confidential source ("CS") to conduct a series of controlled, recorded phone calls with the Defendant. Law enforcement directed the CS pretend that the CS had been recently approached by federal agents asking about the CS's and the Defendant's Oxycodone trafficking with the Dr. Gonzalez. Toll records between the Defendant and SA Crespo and the nature of these conversations between the CS and the Defendant confirmed that: 1) Diaz relied on SA Crespo to provide him with sensitive law enforcement information; 2) Diaz and SA Crespo were deeply concerned that the CS was working for law enforcement; and 3) SA Crespo directed Diaz to repeatedly lie to the CS about Diaz's relationship and drug trafficking activities with Dr. Gonzalez.

In furtherance of the Count 1 and Count 10 conspiracies, on October 2, 2019, during a 24-

minute phone call between the Defendant and SA Crespo, SA Crespo accessed his government computer and conducted a series of searches in law enforcement databases regarding the status of the ongoing Dr. Gonzalez investigation, including HHS-OIG investigative file for the SDFL Strike Force for the ongoing Dr. Gonzalez investigation.  That same day, immediately after terminating his call with the Defendant, SA Crespo called one (1) of the lead SDFL Strike Force agents conducting the ongoing Dr. Gonzalez investigation.  During the call, in attempt to obstruction the ongoing investigation and protect the Defendant, SA Crespo inquired about the status of the ongoing Dr. Gonzalez investigation and lied to the agent and falsely stated that the Defendant ("Jorge" and "friend of a family friend") was merely an elderly man, with back pain, who believed that Dr. Gonzalez was legitimate.  Toll records further confirmed that SA Crespo immediately called and talked with the Defendant after speaking with the agent.

Beginning in April 2020, investigating agents obtained court-authorization to conduct Title III intercepts over the Defendant's cellular telephone (xxx-xxx-3906).  The Title III investigation involved three (3) different periods of interception: April 17, 2020, through May 16, 2020; June 1, 2020, through June 30, 2020; and 3) July 7, 2020, through July 21, 2020.  These Title III intercepts, including law enforcement physical surveillance, revealed: 1) the Defendant, while living at SA Crespo's residence, actively engaging in Oxycodone trafficking with co-defendants Trujillo, Lorenzo, and others, using various recruited patients, including M.P., A.A., P.R., B.R., M.C., and L.A., among others, via multiple pharmacies, Pain Clinic #1, and street buyers; 2) SA Crespo's knowledge and active concealment of the Defendant's past and present Oxycodone trafficking activities; and 3) the Defendant and SA Crespo conspiring to obstruct justice, as charged in Count 10, tampering with witnesses, and providing materially false information to federal law enforcement.

During early June 2020, pursuant to the ongoing Dr. Gonzalez grand jury investigation,

investigating agents attempted to interview certain of the Defendant's recruited patients: L.A., M.C, M.P., A.A, and B.R. Pursuant to these initial interviews, Title III intercepts revealed the Defendant being warned of these interviews, telling his patients to be calm and that SA Crespo stated that law enforcement would not return to conduct additional interviews, and/or directing his recruited patients to tamper with evidence and provide materially false information to law enforcement regarding their Oxycodone trafficking activities with the Defendant. Title III intercepts also uncovered the Defendant speaking with co-defendant Trujillo about these initial interviews and the Defendant confirming that SA Crespo looked after and provided protection for the Defendant, including that law enforcement would not return to conduct additional interviews.

On or about June 19, 2020, at approximately 12:20 p.m., SDFL Strike Force agents sent an email to various law enforcement agents, including SA Crespo, asking to help with interviews for the ongoing Dr. Gonzalez investigation. The email included an attachment containing list of former Dr. Gonzalez patients that needed to be interviewed. At approximately 1:51 p.m., SA Crespo responded to the email and agreed to participate. Pursuant to Title III intercepts, approximately ten (10) minutes later, SA Crespo called the Defendant and directed the Defendant to travel to their home immediately because SA Crespo needed to warn the Defendant, in person, regarding the SDFL Strike Force's recent, planned activities in the Dr. Gonzalez investigation. Title III intercepts also confirmed that the Defendant met with SA Crespo and that SA Crespo disclosed the contents of the email with intended interview targets to the Defendant.

During early July 2020, SDFL Strike Force agents sent an email to various law enforcement agents, including SA Crespo, scheduling a series of additional interviews for July 17, 2020, pursuant to the ongoing Dr. Gonzalez investigation. SA Crespo agreed to participate. On July 14, 2020, the lead SDFL Strike Force agent on the Dr. Gonzalez investigation emailed a written briefing package to all assisting agents, including SA Crespo. The briefing package reiterated

that the Dr. Gonzalez investigation was part of an ongoing grand jury investigation and included the Defendant's photograph and additional information relating to the Defendant and other patient recruiters.

On July 17, 2020, SDFL Strike Force agents interviewed L.A. and M.P., which prompted subsequent panicked calls with Defendant. Thereafter, subsequent Title III intercepts that same day revealed a series of conversations between the Defendant and SA Crespo. The Title III intercepts revealed the Defendant informing SA Crespo that he recently unlawfully purchased Oxycodone ("pullovers") from M.P. and that law enforcement asked M.P. about it. SA Crespo repeatedly provided the Defendant with detailed instructions to destroy and tamper with evidence, obstruct the investigation, and provide materially false information to investigating agents when the Defendant was interviewed. SA Crespo and the Defendant also discussed how to conceal their living arrangement from investigating agents and discussed beating, stabbing and killing possible cooperating witnesses, including co-defendant Lorenzo, if necessary.

During the evening of July 17, 2020, at SA Crespo's direction, the Defendant called the lead SDFL Strike Force agent on the Dr. Gonzalez investigation and left a voicemail message. In the voicemail, as earlier directed by SA Crespo, the Defendant's falsely claimed that he had done nothing wrong and that he did not unlawfully obtain Oxycodone from M.P. When the lead SDFL Strike Force agent on the Dr. Gonzalez investigation did not return the Defendant's call, SA Crespo contacted the agent. On July 2020, the lead SDFL Strike Force agent on the Dr. Gonzalez investigation conducted a consensually monitored call with SA Crespo. During the call, SA Crespo knowingly provided materially false information regarding the Defendant and the Defendant's Oxycodone trafficking activities. On July 21, 2020, the Defendant, and SA Crespo, were arrested and taken into custody.

JUAN ANTONIO GONZALEZ
UNITED STATES ATTORNEY

Date: 7/5/22   By: _Sean T. McLaughlin_
SEAN T. McLAUGHLIN
ASSISTANT UNITED STATES ATTORNEY

Date: 7/6/22   By: _[signature]_
AFPD ~~JOAQUIN E. PADILLA~~ Christian Dunham
ATTORNEY FOR DEFENDANT

Date: 07/06/22   By: _Jorge Diaz_
JORGE DIAZ GUTIERREZ
DEFENDANT